IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

           **Plaintiff,**

v.                                                                             CR. No. 97-696 JP

**LEROY FUENTES GONZALES and**
**MELISSA L. HARDBERGER,**

           **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On January 16, 1998 Defendants Leroy Fuentes Gonzales and Melissa L. Hardberger filed their Motions to Suppress Evidence (Doc. Nos. 29 and 34, respectively). I held hearings on these motions on June 1, 1998 and July 7-9, 1998. Miles Hanisee and David Williams appeared on behalf of the United States. Steve McCue represented Defendant Gonzales and Dick Winterbottom represented Defendant Hardberger. After a review of the briefs and additional information submitted by the parties, the law, and the exhibits, as well as careful consideration of the testimony[1] presented at the hearing, I have determined that both motions should be granted.

---

[1] I had great concerns about the credibility of all three principal witnesses who testified, Officer Ramos, Defendant Hardberger, and Defendant Gonzales.

**Factual Background**

On October 22, 1997 Officer Nick Ramos of the Albuquerque State Police Department was driving east on I-40 approximately thirty miles west of Albuquerque near mile marker 131. Ramos observed the Defendants, also proceeding east, in a dark green Mercedes sedan. Defendant Gonzales was driving the Mercedes and Defendant Hardberger was in the front passenger's seat. Gonzales' six year old son Michael and Hardberger's dog were in the back seat. Ramos testified that while he was driving in the left hand lane of the two eastbound lanes to the left of and slightly behind the Mercedes, which was traveling in the right hand lane, he looked into the Mercedes through the left side, rear passenger seat window.

Ramos pulled over the Mercedes because of the driver's alleged failure to wear a seatbelt. During the course of the traffic stop, Ramos became suspicious that the Defendants were engaged in illegal activity. After the Defendants refused to give consent to a search of the car, Ramos took the Defendants to the New Mexico State Police Office in Albuquerque where a dog sniff revealed the presence of methamphetamine in the Mercedes. The Defendants have argued in their written motions and at the hearing that Officer Ramos did not have reasonable suspicion to make the traffic stop. They also argue that they were unlawfully seized during the course of Ramos' lengthy investigatory stop and that any consent given after being stopped was involuntary.

**Analysis**

Generally, if a search or seizure is conducted under a warrant, the defendant has the burden of proof, but if the police acted without a warrant the burden of proving the validity of the seizure is on the prosecution. United States v. Maestas, 2 F.3d 1485, 1491 (10th Cir. 1993)(quoting 1 Wayne LaFave, Criminal Procedure § 10.4, at 790 (1984)). Thus, after the

defendant makes out a "prima facie case," the burden to prove the validity of the search, and in this case, the validity of the traffic stop, shifts to the government.

To establish a "prima facie case" a defendant must merely show that the Fourth Amendment is somehow implicated. See United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994). Generally, this means the defendant must prove that he defendant has standing[2] and that a warrantless search or seizure has occurred. After the defendant has met this burden, the government assumes the burden of proving that its warrantless actions were justified and that an exception to the warrant requirement applies. United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994); Maestas, 2 F.3d at 1491; United States v. Monsisvais, 946 F.2d 114, 118 (10th Cir. 1991)("The government had the burden to present sufficient evidence to justify the stop of this defendant's vehicle in the proceedings of this case.").

---

[2] It is highly doubtful that Defendant Hardberger had standing to challenge the search of the Mercedes, as no credible testimony or other proof that she had an ownership interest in the vehicle was put forth at the hearing. None of the exhibits relating to title to the Mercedes bear Ms. Hardberger's name. The Texas Certificate of Title found in the Mercedes did not show the name of either defendant on its face or in the assignment form. No documents reflecting payment by Ms. Hardberger of part of the purchase price were offered. Government's Exhibit 8 is a handwritten receipt for the sale of the Mercedes for $4000.00 cash to Defendant Leroy Gonzales only. Ms. Hardberger is a lawyer who practiced law for several years with one of the nation's very large, prestigious law firms. It is most difficult to accept the proposition that an attorney with her experience and ability would pay cash for a Mercedes and make no effort to have the vehicle titled, or at least registered, in her name. Ms. Hardberger's vague testimony about the time, place, and circumstances of the purchase of the Mercedes would give little comfort to a factfinder charged with deciding whether she reasonably proved an ownership interest in the car. Moreover, Ms. Hardberger was a passenger when the car was stopped. Had she been driving, that may have suggested some right to control of, and therefore ownership interest in, the Mercedes. Even that indicia of ownership was absent.

The government, however, did not challenge Defendant Hardberger's standing to contest the validity of the stop of the Mercedes. Hence, unfortunately for the interested law abiding public, the issue has been waived. See United States v. Dewitt, 946 F.2d 1497, 1499-500 (10th Cir. 1991).

In this case, the government bore the burden of proving that the stop of the Defendants on Interstate 40 was lawful. In his testimony given on June 1, 1998, Officer Ramos stated that he was in the left lane of traffic overtaking the Mercedes when he looked over to his right and noticed that the driver was not wearing a seat belt. Officer Ramos explained,

> I was in the left lane of traffic at that time, simply overtaking this vehicle. And I looked over to my right and I noticed that the driver was not wearing a seat belt. I noticed this because I could see the shining buckle near his left shoulder.

(Tr. 6). Later in his testimony, Officer Ramos clarified that he was able to see the seat belt hanging through the rear window on the left side of the car. At the time of this testimony, Officer Ramos' description of the events sounded quite plausible.

On July 8, 1998 the government brought the Mercedes to the courthouse, where I examined it. First, I noted that the windows were tinted and that I was unable to see the seatbelt strap or the buckle through the rear left-side window. However, July 8, 1998 was a cloudy day. There was no direct sunlight entering through the car's windows. I also observed that in its normal position, the unbuckled seatbelt strap lays almost flat against the side door jamb with the shiny chrome-plated tongue between the strap and the door jamb. At that time I thought it would be very difficult for someone to see the seat belt buckle through the tinted left rear window unless rays of sunlight illuminated the interior and reflected off of the chrome plated seat belt buckle. This is what I had understood Officer Ramos to be describing during his testimony on June 1, 1998 when he talked about the "shining buckle."

Because the day on which I observed the Mercedes had been overcast and I had not been able to discern a shining metal buckle through the left rear window of the Mercedes, I was very interested in knowing what the position of the sun had been on the afternoon of October 22, 1997

at the time Officer Ramos stopped the Defendants.  On July 9, 1998 I questioned Officer Ramos and Defendant Hardberger about the position of the sun at the time of the stop.  Their testimony indicated that the sun was somewhat behind and a little to the right of the vehicles at that time.  This suggested that it was possible for sun rays to have been entering the Mercedes through the rear window and the right side windows.  I then, once more, asked Officer Ramos how he was able to ascertain that Defendant Gonzales' seat belt was not fastened.  Again, Officer Ramos said that he "most definitely saw the silver buckle that was near the driver's left shoulder."  When I asked Officer Ramos whether he was able to distinguish the buckle from the sun reflecting off of it, he said "No, I believe it was a, more of a shadow.  The sun, I believe, was coming from this angle so I couldn't, I don't, I didn't see a, the reflecting of a silver metal but I cold see the shape of the buckle." (Tr. 292).  This response directly contradicted his earlier testimony, in which he clearly stated that he had seen the unfastened "shining" buckle.  This more recent testimony left me greatly confused regarding whether Officer Ramos, in fact, observed that Defendant Gonzales had committed a seat belt violation before Officer Ramos stopped him.

     As explained above, the government bore the burden to prove that the search of the Mercedes was lawful.  In this case, the first step in that process was for the government to prove that the traffic stop was valid.  However, because of Officer Ramos' muddled, self-contradictory testimony, the government failed to carry that burden in this case.  Having considered both Officer Ramos' self-contradicting testimony regarding how he detected a seat belt violation and my own observations of the Mercedes' seat belt strap, seat belt buckle, and tinted windows, I find that there was a failure to prove that Officer Ramos actually saw a seat belt violation.  I conclude, therefore, that the stop was without justification.  Because the stop ultimately led to the search of

5

the car, all evidence found in the search must be suppressed as "fruit of the poisonous tree."  See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407 (1963).

This case presents additional interesting, problematic issues, such as whether the stop became an arrest before probable cause was established, whether the length of the investigatory stop at mile marker 131 was excessive, and whether Officer Ramos was legally entitled to take the Defendants to Albuquerque for a dog sniff without Defendants' consenting to go there. However, because of my finding that there is inadequate evidence to support the validity of the traffic stop, I do not reach any of these issues.

IT IS THEREFORE ORDERED that Defendants' Motions to Suppress Evidence (Doc. Nos. 29 and 34) are GRANTED and that the evidence found during the search of the Mercedes is suppressed.

_____
UNITED STATES DISTRICT JUDGE